Good morning, your honors. May it please the court. Deputy Federal Public Defender, Alexandra Yates, on behalf of Mr. Jimenez, who is challenging the district court's denial of his motion to dismiss the indictment in his legal reentry case. And your honors, I'd like to start this morning with what's not in dispute. The district court and the parties are all in agreement that the immigration judge violated Mr. Jimenez's due process rights by failing to advise him that he was potentially eligible for Section 212H relief. So the only question for this panel is whether Mr. Jimenez was prejudiced by the immigration judge's error. In other words, whether Mr. Jimenez has demonstrated plausible grounds for relief, which is a relatively low bar. And of course, a big issue in this case is Mr. Jimenez's ex-wife, Ms. Montoya's case, is that even accepting the district court's adverse credibility determination, which of course we dispute, but even accepting that and discounting the fact in Ms. Montoya's declaration entirely, there are still sufficient evidence to make it a plausible claim that the immigration judge would have granted relief here. So you're saying that on this record with his wife saying, his defense counsel saying that the wife lied, that in the face of that there's still sufficient, or I guess what you say, plausible grounds. Yes, I would say that there's serious problems with the adverse credibility determination. Aren't they more than serious? I mean, why aren't they basically fatal? I would suggest there's problems with the adverse credibility determination, not necessarily with Ms. Montoya's statement entirely. Well, yeah, could you elaborate on that? Because they're walking, you know, she has this divorce proceeding and she says one thing, and then now the defense counsel says, well, she lied. And the judge says, okay, well, is this a lie? Yeah, she lied there. Is that another lie? Yeah, she lied there too. Another lie? Yeah. Then she pops up with another affidavit. And then the court says, well, you know, at the time too, she had a certain amount of income. They'd been separated. There was really no evidence. And therefore, I make this credibility determination. So he says it's nil. How can we disturb that finding? Is that a factual finding we review for clear error? It's a factual finding that in this particular context I've argued should be reviewed for abuse of discretion because it's an adverse credibility finding made on a cold record alone. But even under the clear error standard, I do think that there's clear error here. Now, of course, clear error, as we know from Hinkson, is a factual findings clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction. A mistake is the other side, counsel. That's what I struggle with here. I don't see another side. Sure. I did. I see these every statement that she made seems palpably false as shown either by her own admission or counsel's admission or the record. He elected not to have his wife testify to clarify and explain discrepancies. Where is the other side? Yes, Your Honor, the other side. And it's twofold because I believe there's a procedural problem as well. But let me first address the factual problem. The factual problem is that there were explanations here proffered that were not considered at all. And those explanations are reasonable and consistent with the story. By whom? By the attorney, which is appropriate. And I direct this court to the Cower versus Ashcroft case, which we've cited. In that particular case, at pages 886 to 887, this court specifically said that the problem with the adverse credibility finding was the lower court's failure to address the attorney's proffered explanations. But counsel, forgive me. His, Mr. Jimenez's defense counsel repeatedly said that she'd lied. Yes, sir. In her divorce proceedings. And he went through and my colleague had just mentioned this. I mean, your client's own lawyer repeatedly said she lied, she lied, she lied, she lied, she lied. Yes. And yet when he wants to have what she said be given credibility, then he turns around and says, well, you've got to believe part of it. I mean, what is improper about this adverse credibility determination? That the district court did not consider the explanations for the lie. And under this court's clear precedent, which is in the immigration context, but of course here the district judge was in many ways sitting in an immigration judge's shoes, that a court must consider the explanation. And so what's the explanation? The explanations here, some of the lies were intentional. It was conceded to protect him because she lied and said she served him in Tijuana when we know he was here in the U.S. She lied and said her daughter spent no time with him because she didn't want immigration authorities to know that he was here. Those are consistent with the consistent story of her having a relationship with him where she would have put in an application on his behalf and there would have been an extreme hardship to her and her daughter. But even still, even crediting that, this is an attorney, it's not a witness. So he can explain it, the court can consider it, but the reality is there's no affirmative evidence that she gave that the court found to be credible. She did provide explanations in her declaration itself. Of course, the court did not find those credible. The attorney's explanations, I do believe, are equally sufficient and again I would encourage... We are to take the attorney's explanation when he didn't put her on the stand and he had previously said she lied, she lied, she lied, that somehow were to convert what the court can rely? It's an explanation that the court was required to consider and again, the larger problem here is... I get your point, but it's not evidence, is it? In the immigration context, it seems to be somewhat and again I'd encourage the court to look at the Cower v. Ashcroft. What's your authority for that? And you're saying that that says that if an attorney gets up and says whatever he or she says that that's evidence? That is explanations that the court is required to consider and part of the context as a whole of the case in making an adverse credibility finding. So here you've got, we're still talking in these generalities, we're not really talking about the evidence. So one of the things that was argued on appeal, and you can tell me if it was argued in the district court, is that somehow she got somewhat bamboozled because of the Spanish-English problem in the divorce. Is that one of them? Yes, and that was raised in district court as well, that this was legalese, it was not translated and prepared by third party. That I understand. So he says, well, no, that potentially is a problem, which we often see in cases of people who are either dual language or single language speakers, but then the attorney turns around and says, but she lied. So it's like he pulls the rug out from under himself. Can you help me out on that? I mean, sometimes I think... Maybe not the best strategy, but he did it. Well, but I think he was using the term lie, often parroting what the judge was saying. It was a combination of lies and inaccuracies. Some were affirmative lies, such as that she served him in Tijuana and that he wasn't spending any time with the daughter. Some were miscommunications and inaccuracies that were attributable to third party preparation, legalese not being translated into English. For example, the inconsistencies about income, which the attorney did explain. The fact that she didn't mention the 2008 time in prison. I mean, it was all kind of part and parcel of his time away from her and teasing that out. So it wasn't... I don't think that the trial attorney conceded everything she said was an intentional lie. It was some intentional to protect him and some misstatements. But I do want to emphasize to the court that even if this court upholds the adverse credibility finding, there still remain undisputed facts on which I would strongly suggest there's plausible grounds for relief. And those would be... Why? Yes. Till Mr. Jimenez's first and only arrest, he had lived in the United States for 24 years, been a lawful permanent resident for 10 of those years, had been married to his United States citizen wife for 16 years. The couple had a 12 year old U.S. born, U.S. citizen daughter. Until his arrest, they had lived together as an intact family. That's not what they said. Counsel, you're doing the same thing that the other lawyer did. That there was evidence that that wasn't true. He wasn't with her. He wasn't with the daughter. He wasn't providing support. Up until 2000... Up until his arrest, absolutely, the undisputed evidence... Oh, they were the perfect family until the arrest, right? Yes, that's absolutely right. In fact, his arrest was so aberrational that the state judge not only sentenced him to low term, but after his conviction, denied the state's for nine months until his sentencing, there was additionally evidence of dangerous country conditions. Of course, the most important factor in these 212H cases is family ties and family unity. That's emphasized over and over again. Even without the wife's declaration, there was sufficient evidence, given the long, almost two decades relationship of him and his wife, and his U.S. citizen daughter, and the dangerous conditions, that there were plausible grounds for relief, which again is a very low standard. I see that my time is low. I would like to reserve some of it, if I may. Thank you, Kat. Thank you. May it please the court, Vinh Mittal on behalf of the United States. The district court here properly denied defendant's motion to dismiss, after finding defendant's ex-wife lacked any credibility. Based on that credibility finding, there was simply no evidence to support the defendant's motion. Moreover, because he did not raise his standalone 212H waiver, there's no factual record below to address that waiver issue. Moreover, he waived it procedurally under Rule 12, as well as contractually under the plea agreement that was signed. Finally, I'd submit that as a matter of law, that argument should be rejected if the court reaches it. I first wanted to start by addressing some of the arguments that counsel just raised. In her argument, she stated that even if the defendant's ex-wife credibility finding was submitted, there was still evidence in the record to support a finding of extreme hardship or plausible grounds for extreme hardship. That's simply not the case in terms of the record. The motion was entirely based on two declarations. One is ex-wife's, and then another immigration expert's, and that's it. Clearly an immigration expert wouldn't be testifying about facts about the relationship between the families and whatnot. The only person that was proffer that could do that was the ex-wife. So without that ex-wife's declaration, there was simply no evidence to support that there was this family unity or this kind of relationship that would support it. So I would say that there's no evidence to support that record. As far as family unity being the primary concern here, I think there's a large question about if there was family unity after the rape that occurred in their home. I think we don't really have a record here that supports that that actually occurred. Let me ask you something. Is there a question about family unity before the rape, the criminal offenses? Your Honor, I don't think we have a good sense of what the family situation was at all because of the problematic declaration that was submitted. I don't think we have any credible evidence about what their relationship was like even before the rape. Because we have a declaration that is problematic in that it kind of suggests that there's a relationship, but it omits material facts. It omits the fact that the defendant actually returned within two weeks of his deportation, but nowhere in that declaration does it even mention that the ex-wife had any contact with the defendant after he returned. Moreover, it makes statements about how the family considered moving to Mexico but didn't because of violence in Mexico, which again kind of defies logic because there's no reason for them to move to Mexico since he had already returned to the United States. So we don't really have any credible evidence or competent evidence about what their relationship was like before the rape. Counsel argues that under the low plausibility standard, you could simply X out in effect the situation with the wife and simply look to the U.S. child and length of time and those give you a relief under 212H. So leaving the wife aside, would you comment on that argument? You know, assuming it becomes a question of what is the evidence that supports that, and I don't think we even know what that is. There's nothing submitted from the daughter or any suggestion that the daughter's relationship was still intact. If we had some evidence, even if we were to look, you know, go as far as looking at sentencing and seeing if the daughter was present or filed something, there's nothing in the record that supports an inference that he has any relationship with his daughter. Nothing from even the terms of when he was arrested. He was arrested in Tustin. His ex-wife and daughter were living in Laguna Hills. So there's just nothing in the record that even supports the inference that there's a connection between him and his daughter. And I think the matter of fact is that it's plausible given that the rape and the way it occurred in this incident. I think it occurred in his home with his ex-wife there, present in the home after they had a night out. And so I think there is a strong inference that the district court was drawing that we need some explanation about what that rape and what it did to their family because that's kind of what this kind of claim is based on is that there's extreme hardship. And here we have a question about anything in terms of what the family was like in 2010. I did want to briefly address two other issues. One was the alternative grant that we've raised about violent or dangerous offenses. There is a higher standard that the defendant must meet and we would submit that the defendant has it. I would just point out in the record as part of the conditional plea agreement at excerpts of record 240 and 241, the defendant agreed in his conditional plea agreement that it was a crime of violence and I would submit that under the sentencing guidelines, both for immigration proceedings as well as career offender, as well as under section 16 that this was a crime of violence. But given that this was a discretionary decision, the court was entitled to go beyond that. Finally, I would submit on the waiver issue. One thing I wanted to clarify in our briefs was with the standalone waiver issue is that we were operating under the Rule 12 as it existed in 2013. There was an amendment in 2014. It doesn't have any effect, but I don't think our briefs necessarily clarified that issue. And to raise the issue of the standalone waiver, there had to be a good cause and I think there was no good cause shown here. The law didn't change and simply we have no facts to support it. Presumably we would have had some facts to support that from the defendant and we did not have that here. Julie, since he really didn't argue this standalone proposition below, but it seems that the district court considered it in a footnote, are we on plain error review or what is our standard of review? No, Your Honor. When we are suggesting this procedural waiver, we're saying we're not even reaching plain error because under Rule 12, essentially it's a defect in the indictment and it's a strict rule where unless there's good cause, this court can't consider it. And I don't think the defendant even raises any evidence of good cause for why it wasn't raised below. And to the extent that the district court acknowledged that there's this argument possible out there, I think all that that shows in that footnote is that the defendant implicitly conceded it. The footnote clearly states that he does not argue this point and then says the weight of the authority implies that he doesn't have an argument. There's nothing in there that suggests that the court actually addressed it with the parties or had any sort of determination on that issue. So I would say that under Rule 12, there's no good cause here so that issue is waived procedurally. Moreover, we had a conditional plea agreement which I would say under contractual waiver eliminates this court from reviewing that because it's been another issue that's been waived. So when you sort through arguments on the wife's credibility and all that, you basically would say there's a waiver under Rule 12 and therefore we would say there's no good cause. And as a matter of law, I think the law had changed by then and I don't think he was eligible for such a standalone waiver. And so we would submit that we cited various circuits which kind of upheld that, that there's no standalone waiver after 1996 and the defendant's deportation was in 2010 and so that wouldn't have been available to him. Unless there's further questions, I would submit and ask the court to affirm the conviction in this case. We'll give you an extra minute. Thank you. Thank you, Your Honor, because I do want to address some new issues that were raised by my colleague. Just in terms of the adverse credibility finding, though, I do want to emphasize the district court was sitting in the immigration judge's shoes and if an immigration judge had made the finding the district court made, this court under its precedent should and would reverse because the court did not consider the explanations for the inconsistent statements. This court had been very clear in reviewing IJ and BIA determinations that even if there is an outright lie to government authorities, that can be okay if an explanation is given and that explanation needs to be considered. It's a procedural problem that I would analogize to the 2254 G2 context where we have the Taylor v. Maddox line of cases and there can be a problem with the factual finding because of the process used and that's a big part of what the problem was here. So you're suggesting that what the district judge did is governed by the rules that we apply to IJs as opposed to the normal rules of the district court? I don't believe, I'm not aware of a case that is so directly on point as to say what this court has said in the immigration context. I think it should still hold in a general district court context that if you're going to make an adverse credibility finding and there's explanations for inconsistent statements and previous lies, then the court should be required to consider all of that. But yes, in particular in the case where it's sitting in the shoes of the IJ, that's true. And of course the reason the court's doing that is through no fault of Mr. Jimenez of his own, but because the immigration judge failed to advise him of relief he was eligible for, he's now required to recreate after the fact a situation that would have been before an IJ. Okay, but forgive me counsel, in this kind of a situation doesn't your client bear the burden of proof to put on evidence that would allow the IJ to make a decision in his favor, right? Yes, and he did. If I understand correctly, the only evidence on this point that was put on was put on by his former wife, right? Not quite. Except for the attorney's testimony. No, there was also a number of exhibits submitted to the motion to dismiss that demonstrated their relationship over the years and the applications he put in on his behalf and whatnot. In the existence of the, I believe there was a birth certificate, a marriage certificate. So the basic facts of this long-term intact marriage and a child that family lived together as one family unit I don't believe are subject to any reasonable dispute up until the point of his arrest. The counsel for the government did just briefly mention the exceptional hardship standard and as we noted in our briefs under Leo Callen-Johnson, this type of offense just simply doesn't meet the test. Looking to guidelines and section 16 is one among others that the court can consider. The only way that that factor would go in the government's favor here is under the residual clause. Of course, there's problems with the residual clause right now as we know and I just don't think that can overcome what the Supreme Court has very clearly said in Leo Callen-Johnson and that line of cases that a violent force means violent force and a violent offense is a violent offense and that's not what rape by intoxication as defined in California is nor what the facts of this particular offense show. And then finally on the standalone 212-H issue, Judge Reinhart's decision in Pallares-Galen is directly on point, that was a 1326-D case where on appeal the defendant raised a new argument in support of his same motion and same claim under 1326-D. Here it's simply a new argument for why he had raised a new argument. There's nothing to bar its consideration. The plea agreement, as we detailed in our briefing, and I won't bore the court with that now, does not bar that. What would be the standard on that? The standard is de novo. It's a pure legal question. The government's not prejudiced. They've had a full opportunity to brief it and they have. And in fact, under the, I think it's the Ahanchian decision that we cited, footnote 8, it says that where a district court addressed an issue, even if it wasn't raised, it doesn't matter that a party didn't raise it, it's properly considered by the appeals court. Unless the court has further questions. Thank you, Your Honor. Thank you, Counsel. The case is arguably submitted.
judges: Reinhardt, McKeown, Smith